

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F.#2005R02101         *271 Cadman Plaza East*
PKC:LMN               *Brooklyn, New York  11201*

August 11, 2011

**By Facsimile and ECF**

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. German Dario Polanco
           Criminal Docket No. 07-780 (FB)

Dear Judge Block:

      Sentencing in the above-referenced case is scheduled for September 9, 2011.  The governments writes to request that the Court impose a sentence of life imprisonment for the defendant.

I.    A GUIDELINES SENTENCE OF LIFE IMPRISONMENT IS APPROPRIATE
     UNDER ALL THE FACTORS UNDER 18 U.S.C. § 3553(a)

    A.  <u>Background</u>

      Following a trial before the Hon. David G. Trager, on March 26, 2010, the defendant was convicted of all four counts in the indictment.  Specifically, the defendant was convicted of two counts of murder in furtherance of a drug conspiracy, in violation of 21 U.S.C. § 848(e) (Counts One and Three); and two counts of using a firearm to commit a murder, in violation of 18 U.S.C. § 924(j) (Counts Two and Four).

      As discussed in more detail in the government's opposition to the defendant's Rule 33 motion, in August and September of 2000, the defendant recruited co-conspirator Carlos Medina, a subordinate in the defendant's drug organization, in the murder-for-hire of two individuals who had robbed the defendant of $316,000 of drug money.  Another associate, Luis

Rodriguez, agreed to supervise the organization and commission of the murders.  The defendant instructed Medina to report regularly to Rodriguez regarding the planning and progress of the murder conspiracy.  (PSR ¶ 4.)[1]

Medina testified at trial that he first met the defendant through another drug associate and thereafter began buying cocaine from the defendant. (T. 204, 240).  The defendant eventually confided to Medina that one of his stash houses had been robbed of $316,000 by the defendant's "right-hand" man at the time, who had betrayed the defendant and orchestrated the robbery. (T. 255-56).  Subsequently, Medina became the defendant's "enforcer," collecting money on narcotics debts owed to the defendant and eventually participating in murder for the defendant. (T. 259-60).

Around the end of August 2000, the defendant approached Medina and asked him to commit the instant homicides.  The defendant picked Medina up at his home.  Rodriguez was also in the car.  (T. 285-86).  In the conversation in the car, the defendant reminded Medina of the robbery of the defendant's drug stash house, telling Medina that both "Ronnie," "El Renco" and two other men had participated in the robbery.  The defendant thereafter asked Medina to hire some men to kill Ronnie and El Renco.  Rodriguez, who was a participant in this conversation, volunteered to supervise the murders, and the defendant agreed. (T. 287-88).  The defendant stated that he wanted to be out of the state or out of the country when the murders occurred so that they could not be traced back to him, and told Medina that "the job" was located around 102nd Street in Queens, near Jamaica Avenue.  (T. 291-92).

Prior to the commission of the murders, Medina met with Rodriguez to discuss the plan as well as Medina's fee.  While Rodriguez, acting on behalf of the defendant, initially rejected Medina's price of $15,000 per victim, the defendant ultimately agreed to pay it when Medina later negotiated with the defendant directly for the fee.  (T. 301-03).  Medina continued to meet with Rodriguez almost daily regarding the progress of the homicides and to consult with the defendant when necessary.  (T. 303-04).  Medina recruited a local man named Alex Core to do the shootings, and on the day of the murders Core brought along another man, Manuel Santos, to assist. (T. 322, 358).

---

[1] "T" refers to the trial transcript.  "PSR" refers to the Presentence Report.

2

On September 26, 2000, the day of the homicides, Medina, Core and Santos conducted surveillance of the intended victims' residence at 101st Street and Park Lane South in Queens, laying in wait in Santos' vehicle for the victims to exit the residence. Rodriguez also conducted surveillance from his car of the residence. (PSR ¶¶ 8-9). That evening, Wilbur Garces and his fourteen year-old stepson, Edgardo Bryan – who were not the intended victims -- exited the target residence, got into their vehicle and attempted to drive away. After Santos' vehicle blocked the victims' vehicle from leaving, Santos and Core exited their vehicle and attempted to fire their guns at the victims. Core's gun jammed, however Santos's fired numerous rounds into the victims' vehicle. Both Garces and Bryan died at the scene of numerous gun shot wounds to the face and torso. (PSR ¶ 10.)

Almost immediately after the murders, Medina paged and called the defendant to notify him that the murders were a success. Medina contacted the defendant at the same pager number that the defendant used a few months later to negotiate a 16 kilogram cocaine transaction with an undercover agent in Miami, Florida. (PSR ¶ 13.) The day after the murders the defendant learned that Medina and the shooters had killed the wrong people as Garces and Bryan were not the defendant's intended victims. (PSR ¶ 10). Regardless of the fact that the wrong people were killed, the defendant paid Medina a total of $30,000 for the two murders over the course of various partial payments both before and after the murders. (PSR ¶ 11). Medina, in turn, paid Core and Santos a portion of the $30,000. (PSR ¶ 11.) After Garces and Bryan were killed, the defendant told Medina that he should continue to look for and kill Ronnie and El Renco. (T. 450, 452.)

Core was subsequently murdered a month after the instant double homicide in October 2000 in an unrelated homicide. (PSR 7 ¶.) Santos and Rodriguez were both separately tried and convicted of the murders of Garces and Bryan, and both were sentenced by Judge Trager to life imprisonment. (PSR ¶¶ 17-18.) Medina is awaiting sentencing. (PSR ¶ 19.)

B. The Defendant's Guidelines Range in the PSR

The two murder counts under 21 U.S.C. § 848(e) carry a statutory mandatory minimum sentence of 20 years imprisonment and a maximum potential sentence of life. The two murder counts under 18 U.S.C. § 924(j) carry a statutory maximum term of life imprisonment. As outlined in the PSR, the defendant's total offense level is 49 and he falls within criminal history II, resulting in an advisory Guideline range of life imprisonment.

3

(PSR ¶¶ 25-45, 88). The Probation Department recommends a sentence of life imprisonment. (Probation Rec. at 1).

    C.  <u>A Sentence of Life Imprisonment is Appropriate</u>

This Court should impose a sentence of life imprisonment. As noted earlier, the defendant's total offense level is 49, above the highest level on the sentencing table, resulting in an advisory Guidelines range of life imprisonment. Such a sentence is appropriate here.

> In the case of premeditated killing, life imprisonment is the appropriate sentence if a sentence of death is not imposed. A downward departure would not be appropriate in such a case.

U.S.S.G. §2A1.1, app. note 1. While any premeditated killing has a presumptive sentence of life, the murders in this case are especially egregious. This defendant not only ordered and intentionally caused the death of two people, but he did it for the purpose of retaliation and maintaining order within his narcotics organization. The defendant was the catalyst for these murders; but for his orders, these murders would not have occurred.

Moreover, the defendant's orders resulted in the slaying of the wrong individuals. The shooters he ordered Medina to hire mistakenly shot two innocent victims, Wilbur Garces and Edgardo Bryan, a fourteen-year-old boy. Garces and Bryan were innocent victims who had nothing to do with the robbery of Polanco's $316,000. Moreover, even after the killings of two innocent people, including a minor, the defendant financially compensated Medina a total of $30,000, and gave him instructions to continue looking for Ronnie and El Renco, the intended targets. The defendant's conduct was ruthless and depraved.

While the defendant would face an advisory Guidelines sentence of life even if he were a first offender, the defendant also has a criminal history. In 1994, the defendant was arrested and tried in New Jersey for the manufacture and distribution of a controlled substance, but was acquitted of those charges. In February 2001, the defendant was convicted in the Southern District of Florida of conspiracy to possess cocaine with intent to distribute and attempted possession of cocaine with intent to distribute. These charges were the result of an undercover operation whereby the defendant attempted to purchase 16 kilograms of cocaine from an undercover agent. The defendant was

4

sentenced to 87 months' custody on those narcotics charges. Furthermore, in this case, the defendant's conduct involved the operation of an extensive cocaine distribution business.

   The factors under 18 U.S.C. § 3553(a) that the court must consider in fashioning an appropriate sentence, in particular the nature of the crime, the need for deterrence, and protection of the community weigh in favor of life imprisonment. As noted above, the egregious nature of the offense, including the fact that it was committed for pecuniary gain, the vulnerability of the fourteen-year-old victim, the fact that the defendant has a prior criminal history that stems from drug trafficking, and the absence of any remorse by the defendant, weigh heavily in favor of a sentence of life imprisonment. Further, there are no mitigating circumstances that weigh against this sentence.  Consequently, a sentence of life imprisonment is appropriate.

II. <u>CONCLUSION</u>

   The government requests that the court impose a Guidelines sentence of life imprisonment.

            Respectfully submitted,

            LORETTA E. LYNCH
            United States Attorney

         By: _____/s/_____
            Robert L. Capers
            Licha M. Nyiendo
            Assistant U.S. Attorneys
            718-254-6346/6350

cc: Carlos Martir, Esq. (by email)
   Clerk of the Court (FB) (via ECF)